PERKINS, admr. *against* STONE and others.

*A*, an inhabitant of this state, having placed a quantity of paper in the hands of *B*, an inhabitant of *Massachusetts*, for sale on commission, died here, before *B* had rendered his account, and *C* was appointed, by the proper court of probate in this state, the administrator of his estate. *C* gave notice of his appointment to *B*, with directions regarding the disposition of the paper remaining in his hands, and the avails of what had been sold; and *B* delivered over to *C* a quantity of paper undisposed of, and paid *C* what he claimed to be due to him. No administration was granted upon *A's* estate in *Massachusetts*; nor were there any creditors of *A* in that state. His estate was insolvent. In an action brought in this state, by *C*, as administrator of *A*, against *B*, served with process in this state, for negligently selling the paper, for less than its value, to persons without responsibility, by which it was lost to the plaintiff, it was held, 1. that *C*, as administrator, had such an interest in the subject matter of the suit, as would enable him to maintain it; 2. that *B*, by his conduct, had recognized the authority of *C*, and treated him as the owner of the property, and had thereby made himself liable to *C* for his misconduct.

By the laws of *Massachusetts*, an administrator appointed in another state, is considered as the *principal* administrator; and an administrator appointed in *Massachusetts* on the same estate, is considered as merely *ancillary* to him;

and all the property of the deceased in that state, not needed for the payment of debts presented there, and for the necessary expenses of the ancillary administration, is to be delivered over to the principal administrator.

Tʜɪs was an action on the case, brought by *Thomas C. Perkins*, Esq., as administrator of the estate of *Henry Hudson*, deceased.

The plaintiff, in the first count in his declaration, alleged, that on the 1st day of *July* 1843, he, as the administrator of said *Hudson*, had, in the hands of the defendants, fifteen hundred reams of paper, of the value of 3000 dollars, to be by them sold, on commission, to the best advantage, and the avails thereof to be paid to him, as such administrator ; but the defendants, neglecting their duty, did not sell the same prudently, and to the best advantage, but carelessly and negligently sold the same, for less than the value thereof, and on credit, to persons without responsibility, and who could not, and never did, pay for the same ; and that he otherwise wasted said paper, so that the same was lost to the plaintiff.

In the second count, the plaintiff alleged, that the defendants had undertaken to sell the paper for cash, and to the best advantage, and to pay over the net avails to him, as such administrator ; and that it had become and was their duty so to dispose of the same ; but that the defendants, not regarding their duty, did not sell the same prudently, and for cash, and to the best advantage, but carelessly, negligently, willfully and with intent to defraud the plaintiff, as such administrator, sold the same for much less than the value thereof, and to persons without credit or responsibility, and who never would, and never did, pay for the same, and otherwise wasted said paper, whereby the same became and was, wholly lost to said administrator ; to his damage, as such administrator, 3000 dollars.

The cause was tried, upon the general issue, at *Hartford, January* term, 1847, before *Church*, J.

On the trial, it was admitted by the parties, that the paper mentioned in the plaintiff's declaration was consigned, by *Hudson*, in his life-time, to the defendants, who were commission merchants in *Boston*, in the state of *Massachusetts*, to be by them sold on his account. *Hudson*, afterwards, in the year 1843, died, at *Hartford*, in the state of *Connecticut*, where he then resided and had his domicil ; and the

plaintiff was, soon afterwards, duly appointed administrator upon his estate, by the court of probate, for the district of *Hartford.* The plaintiff, after his appointment, gave notice thereof to the defendants, and also gave directions regarding the disposition of the paper remaining in their hands, and the avails of the paper by them sold. No objection was made by them, at that time, or previously, to the power or rights of the plaintiff, as administrator, in regard to the paper in question, or the avails thereof; and they delivered over to his agent a quantity of paper in their hands, and paid him what they claimed to be the balance due from them.

It was also admitted, that the defendants, when they received the paper, were, and ever since have been, residents in the city of *Boston,* and domiciled there; and that the paper, at the death of *Hudson,* was in their possession in *Boston,* and so remained until sold by them; and that no service of the plaintiff's writ was made upon any of the defendants, except *Alfred Norton,* upon whom service was made, while he was temporarily at *Hartford* on business.

No administration was ever granted upon the estate of *Hudson,* in the state of *Massachusetts;* and there was no evidence that there were any creditors of his residing in that state. His estate was insolvent.

The defendants denied, that they had been guilty of any negligence, fraud or misconduct, in the sale of the paper; and further claimed, that upon the facts so admitted, the plaintiff had acquired no title to the paper, by virtue of the administration granted to him; and that he had no such title as would enable him to maintain his action; and they requested the court so to instruct the jury.

The court did not so instruct the jury; and they returned a verdict in favour of the plaintiff; whereupon the defendants moved for a new trial for a misdirection.

*Hungerford,* in support of the motion, after remarking, that the plaintiff, to sustain his action, must prove a title to the paper in question, contended, 1. That an administrator has no official authority beyond the territorial jurisdiction of the state. *Riley* v. *Riley,* 3 *Day* 74. *Sto. Confl. L.* 441, 2.

2. That the administrator, by his appointment, acquires a title to all the personal property of the deceased, situated,

at the time of his death, within the state. *Griffith* v. *Frazier,* 8 *Cranch* 9. *Babcock* v. *Booth,* 2 *Hill* 181.

3. That he acquires no title to any of the personal property situated without the state, at the time of the intestate's death. In the first place, he is not accountable for it upon his probate bond, or otherwise. *Sto. Confl. L.* 424. *Hacker* v. *Olmstead,* 6 *Pick.* 482. *Harrison* v. *Storey* & al. 5 *Cranch* 289. *Fay* v. *Haven,* 3 *Metc.* 139. Secondly, he can make no assignment of negotiable paper, so as to vest the assignee with a right of action against another person, a resident and citizen of another jurisdiction, at the time of the intestate's death. *Stearns* v. *Burnham,* 5 *Green* 261. *Thomas* v. *Wilson,* 2 *N. Hamp. R.* 231. *Cutter* v. *Davenport,* 1 *Pick.* 81. Thirdly, the defendants would not have been justified in surrendering up the property to him. *Sto. Confl. L.* 432. *Vaughan* v. *Barrett,* 5 *Verm. R.* 333. *Daniel* v. *Luker,* 3 *Dyer* 305. Fourthly, the administrator in *Connecticut* had no right to the possession of the paper in question, nor in any way to intermeddle with it. *Kerr* v. *Moon,* 9 *Wheat.* 565. *Apsden* & al. v. *Nixon* & al. 4 *Howard* 467. 1 *Richardson's R.* 116.

4. That neither the fact that the defendants did not deny the authority of the administrator, nor of their delivering to him a part of the paper, nor of their paying him over a portion of the proceeds, gives him any title to the property.

*Parsons* and *T. C. Perkins,* contra, insisted, 1. That the principal administrator has evidently *some* degree of interest in the intestate's property in other jurisdictions; because, in any event, he ultimately receives the balances from those jurisdictions. *Sto. Confl. L. s.* 515. *Shultz,* admr. v. *Pulver* & al. 3 *Paige* 182. *Doolittle* v. *Lewis,* 7 *Johns. Ch. R.* 45. *Rand,* admr. v. *Hubbard* & al. 4 *Metc.* 252. 258.

2. That in a case like this, the administrator has that degree of interest which is necessary to maintain the suit. In the first place, it is to be borne in mind, that there is not here a conflict between two administrators in different jurisdictions, nor between the administrator and a creditor. Secondly, the defence set up, is made by a mere wrong-doer. Thirdly, the sustaining of the plaintiff's claim, does no injustice. Fourthly, his claim is in harmony with other principles of law relating to this subject. These are, that the principal administrator has

the final disposition of the property ; that balances from other jurisdictions come into his hands ultimately ; that he takes charge of all property that comes to his hands, before it is actually appropriated by the ancillary administrator ; that, as a general rule, debts and claims follow the person of the creditor. *Sto. Confl. L. s.* 520, 1. *Atwood* v. *Protection Insurance Company,* 14 *Conn. R.* 562. Fifthly, the principle on which the plaintiff's claim is founded, promotes public *convenience ;* for, unless it is sustained, administration must, in all cases, be taken out in every state where there is any property belonging to the intestate, though he has no creditors there, and the debtors are willing to make payment to the principal administrator. *Sto. Confl. L. s.* 515. 517. 520. 521. *Shultz,* admr. v. *Pulver* & al. 3 *Paige* 182. S. C. in err. 11 *Wend.* 362. *Doolittle* v. *Lewis,* 7 *Johns. Ch. R.* 49. *Rand,* admr. v. *Hubbard* & al. 4 *Metc.* 257, 8. *Dawes* v. *Head,* 3 *Pick.* 146, 7. *Barrett* v. *Barrett,* 8 *Greenl.* 346.

3. That this is a case where an action for the fraud might have been sustained, by the administrator, in his individual capacity ; and his description as administrator, is mere surplusage. *Tallmadge* v. *Chapel* & al. 16 *Mass. R.* 71. 73.

WAITE, J. The only question, presented for our consideration, in the present case, is, whether the plaintiff has such an interest in the subject matter of the suit, as will enable him to maintain his action. His right to sue, in this state, is not denied ; and no question is made as to the jurisdiction of the court, in consequence of the residence of the defendants in *Massachusetts,* and the service of process upon one of them only.

The paper in the possession of the defendants, was the property of *Hudson,* at the time of his decease ; and had it then been within the jurisdiction of this state, the legal title would have immediately passed to the plaintiff, upon his appointment as administrator. In that case, there would clearly have been no legal impediment in the way of his recovery.

But it is insisted, that as the property was within the jurisdiction of another state, the plaintiff, by virtue of letters of administration granted to him in this state, acquired no title or interest in it. Had it been necessary for the plaintiff to go into the state of *Massachusetts* to bring his action, it is con-

ceded, that he must have taken out letters there, to enable him to sue in his representative character. But as he is under no necessity of invoking the aid of the courts of that state, his case is not brought within the operation of the rule which precludes an administrator appointed in one state, from suing in the courts of another.

The question still recurs, has the plaintiff, under the circumstances of the present case, an interest in the personal property of the deceased in the state of *Massachusetts.* It, therefore, becomes necessary to advert to the laws of that state, to determine the rights and obligations of the defendants, in relation to that property. And by a recent statute, we are authorized to notice judicially the reports of the decisions of other states, for the purpose of ascertaining their common law, and the construction given to their statutes. *Stat.* of 1840.

Now, it seems to be well settled, by a course of decisions there, that as the plaintiff is appointed administrator in the state where the deceased had his domicil, he is to be considered as the *principal* administrator; and an administrator appointed there, would be considered as merely *ancillary* to him—as his deputy or agent. *Dawes* v. *Head* & al. 3 *Pick.* 141. *Fay* v. *Haven* & al. 3 *Metc.* 114. *Stevens,* admr. v. *Gaylord,* 11 *Mass. R.* 263.

All the property that might be collected in that state, not needed for the payment of debts that might be presented there, and the necessary expenses attending the ancillary administration, could lawfully be paid and delivered over to the plaintiff, and be by him disposed of, in the same manner as the property of the deceased collected within this state. *Fay* v. *Haven* & al. 3 *Metc.* 114.

But, in this case, as the estate is insolvent, were there creditors in *Massachusetts,* they would be entitled to receive no more of the estate than creditors residing in this or any other state. The mere circumstance that a portion of the goods of the deceased were found within the jurisdiction of that state, would give them no right to receive a greater dividend than if they had presented their claims against the estate here. The only advantage they would gain, would be merely the right to receive their dividends from the ancillary, instead of the principal, administrator. *Davis* v. *Estey* & al. 8 *Pick.* 475.

But it is conceded, that, in the present case, it does not appear that there are any creditors whatever in that state. If such be the fact, then the plaintiff, if he were compelled to collect his claim against the defendants, through the agency of an ancillary administrator, would be entitled to the whole avails of the property in the hands of the defendants, after deducting the necessary expenses of collecting and transmitting the funds.

It is very apparent, therefore, that the plaintiff, in his character of administrator, and representing, as he does, the interests of all the creditors of the deceased, who, as the estate is insolvent, are entitled to the avails of all his property, has an interest, and a very important interest, in the funds in the hands of the defendants.

It is to be observed, that the present suit is not in relation to any property now in existence in another state, but is brought to recover damages for an unlawful disposition of the property of the deceased. Suppose the defendants, after the sale of the property complained of, had removed into *Connecticut.* To whom would they be liable for the damages resulting from their misconduct? To the plaintiff, or to an administrator to be appointed in *Massachusetts?* If the latter, how is he to obtain redress? The defendants, by their removal to this state, place themselves beyond the jurisdiction of the courts of *Massachusetts*, and the reach of their process.

The administrator there cannot resort to the property; for the case shows that to be wholly lost and gone. He cannot call upon the defendants, for they are beyond his jurisdiction. He cannot follow them into this state, and sue them, because his authority is limited to the jurisdiction of the state, which clothed him with power to act as the representative of the deceased. In such case, it seems to us clear, that the defendants would be liable to the plaintiff, for the unlawful conversion of the property of the deceased, although the wrong was committed by them, in another state. Such must be the necessary result; or the defendants, by a removal after the conversion, might escape, with impunity, the consequences of their illegal conduct.

It is true, in the present case, there has been no removal of the defendants from the state where the wrong complained of was committed. But they are found in this state, at least one

of them, and the plaintiff sues for their misconduct.    The de-*Hartford,*
July, 1847.

Perkins
*v.*
Stone.fendants do not show that they are liable for the damages to any other person.    Under these circumstances, we cannot say, that the plaintiff has not such an interest in the subject matter of the suit as that he cannot recover.    The case would be different, were it shown, that there was an administrator in the state where the defendants belong, to whom they are answerable.    But as there is no such administrator, and as it does not appear that there are any persons in the state of *Massachusetts*, having any interest in the demand against the defendants, the court are rather inclined to the opinion that there is no legal impediment in the way of the plaintiff's recovery.

But there is another view of this case, which is not to be disregarded.    The paper in question was the property of *Hudson.*    Upon his decease, although it remained in the possession of the defendants, their power over it was gone.    The legal title would vest in an administrator, whenever appointed. The plaintiff obtains that appointment, in the state where the deceased belonged.    If he did not thus acquire a legal title, as we have already shown, he thereby acquired a beneficial interest therein, for the benefit of the creditors, whom he represented.    He gives notice of that appointment to the defendants, and directs them as to the disposition of the property.    They receive those directions, and act under them, without objection as to his power or rights.    They deliver to his agent a part of the property, dispose of the residue, and pay over to him what they admit to be due from them for the portion which they have sold.

The plaintiff now claims, that they have acted in violation of the trust which he has reposed in them, and improperly sold the property to bankrupts, in consequence of which it has become wasted and lost.    For this he sues them.

The defendants, by thus recognizing his authority, and treating him as the owner of the property, have in effect placed themselves in the same situation, as if they had actually received the property from him, to sell as his agents.    Had they, in the first instance, denied his power to controul the disposition of the property, he doubtless would have taken the requisite measures to acquire the possession.    But, by virtually surrendering it into his hands, placing it under his controul, and then

acting as his agents in the disposition, in our opinion, they have made themselves responsible to him for their misconduct.

Upon the whole, therefore, we think a new trial must be denied.

In this opinion the other Judges concurred.

New trial not to be granted.