Marcy *v.* Marcy.

# SUPREME COURT OF ERRORS.

## TOLLAND COUNTY, NOVEMBER TERM, 1864.

### Present,

### HINMAN, C. J., DUTTON, BUTLER AND PARK, Js.

## MERRICK MARCY *vs.* CALVIN MARCY, EXECUTOR OF ABIGAIL MARCY.

Every person who intermeddles with the goods of a deceased person, and does such acts as belong to the office of an executor, is deemed by the law to have intruded into the office of executor, and becomes chargeable as executor de son tort.

But the executor of a testator who was domiciled at the time of his death in another state and left goods in this state or debts owed to him here, is not so a stranger to such goods or debts that he can be considered an intermeddler and an executor de son tort, if he comes here and takes possession of such goods or collects such debts.

An administrator derives his title from a grant of administration, but an executor, in the absence of any local statute making a probate of the will essential to his

title, takes a title from the will, as an instrument of conveyance at common law.

Moveable property has no situs, and if it be in a different state from that in which the testator was domiciled, it passes by the will to the executor according to the law of the domicil, subject to the rights of the creditors belonging to such other state.

Such title will be recognized *ex comitate,* but· as a settled rule of international law binding on our courts, so far as it may be done consistently with our laws and the rights of our own citizens who may be creditors.

An executor may do any acts before probate which do not require him to make profert of or prove the will, and if he do not renounce may be sued before probate of the will as executor *de jure.*

An executor of a person domiciled at his death in a sister state, who comes here and collects debts due the testator, stands on the same ground, to the extent of such assets, as ;a domestic executor who has not proved the will, and may be sued as executor *de jure.*

An executor may collect debts due here if paid voluntarily, and remove them to the state of the domicil and there administer them. But a creditor of this state may take administration or bring suit against such foreign executor, for the purpose of having such assets appropriated to the payment of his debt, at any time before the executor has fully administered in the state of the domicil. If he lies by without interposing by administration or suit until such assets have been fully administered in the state of the domicil, he waives his rights and can not afterwards enforce them.

An executor de son tort may give to a creditor the notice provided by the 37th section of the statute concerning estates, (of refusal to pay his claim,) and if the creditor does not bring suit within six months thereafter his right to sue will be barred.

An executor of a testatrix domiciled at the time of her death in Massachusetts, proved the will there, and afterwards came into this state and collected debts due the testatrix here at the time of her death and removed them to Massachusetts, and there fully administered them and paid the money over to creditors and legatees, having first given the notice authorized by statute, to a creditor here, that he should not pay a claim which the creditor had presented to him. The creditor neglected to take administration or bring suit until after the expiration of six months from the time of giving the notice, and until after a final settlement and distribution of the estate in Massachusetts. In a suit afterwards brought by the creditor against the executor for the debt, it was held—1. That, having collected debts due here, the defendant was liable to be sued here as executor *de jure.* 2. That the creditor, by his neglect to take administration or bring suit until after a final settlement and distribution in Massachusetts, had waived his right to such administration or suit. 3. That by his neglect to bring suit within six months after the notice given by the defendant, his right to sue was barred.

GENERAL ASSUMPSIT, against the defendant as executor of Abigail Marcy. The suit was brought to recover the amount of an account for goods sold and money lent to the said

Abigail, during her life time, and the defendant was claimed to be liable as executor in his own wrong. The case was tried in the superior court on the general issue with notice closed to the court, and the following facts were found.'

Abigail Marcy died in the town of Sturbridge, in the county of Worcester and state of Massachusetts, where she had lived for many years, on the 25th of February, 1862, leaving personal estate appraised at $1,139, and a will by which she appointed the defendant her sole executor. The defendant accepted the trust and proved the will in the court of probate for the county of Worcester, gave bonds as executor, and proceeded regularly with the settlement of the estate as a solvent estate, and fully completed the settlement in the probate court on the 12th of May, 1863. There was never any probate of the will or any ancillary or other administration of the estate in any probate court in the state of Connecticut. All the assets of the testatrix were at her death in the state of Massachusetts, and in the county of Worcester, except as follows:—the sum of $82.46, which had been during her life deposited in a savings bank in the town of Stafford in this state, and which was drawn and receipted for by the defendant as executor in March 1863 ; a promissory note against Ransom Badger, of the town of Union in this state, on which was collected by the defendant, in September, 1862, by suit brought in the county of Worcester, where Badger then temporarily resided, the sum of $35.39 ; and a small due bill against the plaintiff. The deposit book for the savings bank money, the note against Badger, and the due bill against the plaintiff, were after the decease of the testatrix found by the defendant among her papers at her place of residence in Sturbridge, and by him inventoried as a part of her estate, and the avails regularly administered upon and distributed under the will in the state of Massachusetts. No creditors of the testatrix residing in this state have appeared, and no persons made any claim against the defendant as executor, or against the estate, except the plaintiff, who exhibited his claim to the defendant in April or May, 1862, and subsequently, at different times between that time and the first day of July, 1863,

demanded payment of the defendant, but neither the claim nor any part of it has ever been allowed by the defendant, and it was in fact expressly disallowed by him on the 18th day of May, 1862, and notice at the same time given to the plaintiff. The balance due the plaintiff on his account, after deducting the amount of the due bill owed by him to the testatrix, was found to be $84.63.

Upon these facts the case was reserved for the advice of this court.

*West*, for the plaintiff.

1. Any person who, without being appointed executor or taking letters of administration in this state, takes possession of the assets of a deceased person found within this state, and appropriates or disposes of them, or pays debts with them, when there is no lawful executor or administrator in this state, qualified by law, is liable as executor in his own wrong, and may be sued as such by a creditor of the estate. 1 Swift Dig., 452; Story Confl. Laws, § 514; *Bacon* v. *Parker*, 12 Conn., 212; *Bennett* v. *Ives*, 30 id., 329; 2 Greenl. Ev., § 343; *Leach* v. *Pillsbury*, 15 N. Hamp., 137.

2. An executor or an administrator, qualified or appointed in another state, can not sue or be sued as such in this state. Story Confl. Laws, §§ 513, 514. Letters of administration granted in another state are of no avail in this. *Riley* v. *Riley*, 3 Day, 74. Foreign administrators and executors have no power here. *Hobart* v. *Connecticut Turnpike Co.*, 15 Conn., 145; *Goodwin* v. *Jones*, 3 Mass., 514; *Stevens* v. *Gaylord*, 11 id., 263; *Champlin* v. *Tilley*, 3 Day, 303. Our statute provides expressly for the proof of the will in this state, where the testator at the time of his death lived out of the state and left property within the state. Rev. Stat., tit. 14, § 11.

3. If a foreign executor or administrator comes into this state, and without proving the will or taking out letters of administration here, takes possession of the effects of the decedent found here, or collects debts due him from persons residing here, or receives payment of such debts where it is

voluntarily made by the debtors, he is liable to be sued in our courts by any creditor of the decedent in this state. Story Confl. Laws, §§ 514, 520, and note; *Doolittle* v. *Lewis*, 7 Johns. Ch., 45, 47. He can not collect the debts and effects and carry them out of the state to the prejudice of the creditors residing in this state. Story Confl. Laws, §§ 512, 513, and note; *Perkins* v. *Williams*, 2 Root, 462; *Stevens* v. *Gaylord*, 11 Mass., 269; *Lawrence* v. *Kitteridge*, 21 Conn., 583; *Upton* v. *Hubbard*, 28 id., 284. A foreign administrator can not discharge a debt here. *Vaughn* v. *Barret*, 5 Verm., 333. The debts collected by the defendant were assets where the debtors resided at the time of Mrs. Marcy's death, and that was in this state. Story Confl. Laws, § 520; *Holcomb* v. *Phelps*, 16 Conn., 135; *Upton* v. *Hubbard*, 28 id., 286; *Goodwin* v. *Jones*, 3 Mass., 520; *Stevens* v. *Gaylord*, 11 id., 268. And he can discharge himself only by showing that he has delivered or paid over the effects or money to the rightful executor or administrator in this state, duly appointed and qualified here, or that he has himself taken out letters of administration or proved the will in this state and administered the estate according to law. 2 Bla. Com., 508, 512; 2 Greenl. Ev., § 344: *Bennett* v. *Ives*, 30 Conn., 334. Mrs. Marcy's estate, in the absence of any finding to the contrary, is to be presumed solvent. *Bacon* v. *Parker*, 12 Conn., 217. And the estate was solvent in fact. The defendant should have taken out ancillary administration here, or proved the will, and then it would have been his duty to pay the creditors here in full, or till he had exhausted the assets here, and to transmit the balance, if there was any, to the principal administrator or executor, to be disposed of according to the laws of the state where the decedent resided. Story Confl. Laws, §§ 513, 518; *Perkins* v. *Stone*, 18 Conn., 275; *Stevens* v. *Gaylord*, 11 Mass., 263; *Dawes* v. *Head*, 3 Pick., 128. The plaintiff having a right to recover, the judgment must be for the whole debt. *Tweedy* v. *Bennett*, 31 Conn., 276.

4. The defendant being executor in his own wrong can take no advantage of or benefit from his own wrongful act. *Bennett* v. *Ives*, 30 Conn., 335; 2 Bla. Com., 508, 512. He

can not claim that the suit must have been commenced within six months from the time he refused the plaintiff's claim, under the provision of our statute to that effect with regard to a rightful executor or administrator. He can protect himself, if he does not take out administration or prove the will here, and thus become a rightful executor or administrator, only by the general limitation of actions, where the lapse of time is sufficient; and it is doubtful whether he can do this.

The demand of payment was unnecessary, and the refusal and notice of the defendant had no legal effect.

*Waldo* and *Hyde*, for the defendant.

1. An executor appointed and qualified in another state can not be sued as an executor in this state. Story Confl. Laws, § 513; *Riley* v. *Riley*, 3 Day, 74; *Doolittle* v. *Lewis*, 7 Johns. Ch., 49; 2 Taylor on Ev., § 1547.

2. The defendant is not executor in his own wrong. Rev. Stat., tit. 14, § 31; *Bacon* v. *Parker*, 12 Conn., 212; *Bennett* v. *Ives*, 30 id., 329. As executor in Massachusetts he had a lawful interest in the personal property in Connecticut, and it was his duty to do what he could to secure it and to see that it was properly administered. Story Confl. Laws, § 515; *Perkins* v. *Stone*, 18 Conn., 270, 275; *Potter* v. *Hiscox*, 30 id., 508. Though he could not sue as executor here, yet a voluntary payment to him by a debtor here would be valid, and a discharge given by him as executor would be sufficient. Story Confl. Laws, § 515; *Doolittle* v. *Lewis*, 7 Johns. Ch., 49; *Trecothick* v. *Austin*, 4 Mason, 33; *Rand* v. *Hubbard*, 4 Met., 255; *Holcomb* v. *Phelps*, 16 Conn., 127; *Lawrence* v. *Kitteridge*, 31 id., 583. The defendant received this money as executor in Massachusetts, and it is expressly found that he has fully administered upon it there. *Campbell* v. *Tousey*, 7 Cowen, 64, 67.

3. The plaintiff as a creditor of the decedent had full power to take out administration here. He is also a son of the decedent and as such had the same right. He would have had a full opportunity by so doing to secure the assets within

this state for administration here, but by neglecting to avail himself of this remedy he has waived his right to it.

4. The suit was not commenced in season. The statute expressly provides that suit must be brought against an administrator or executor within six months after a refusal to pay. Here there was a demand and refusal, and special notice given to the plaintiff that the claim would not be paid, and the suit was not brought until nearly eighteen months after the notice. If the plaintiff treats the defendant as executor in suing him, he is bound to treat him as such in all respects. His right to recover is founded upon his right to recover against a rightful executor, and if he could not have recovered against a rightful executor he ought not to recover at all. Whatever limitations may be laid on the defendant in asserting the rights of a lawful executor, yet clearly the plaintiff must have a claim which would not be barred, and upon which he could recover, if the defendant were, as the plaintiff in his writ alleges him to be, a rightful executor.

BUTLER, J. The doctrine that any one who intermeddles with the goods of a deceased person, and does such acts as belong to the office of an executor without taking out administration, becomes chargeable and may be sued as executor, is grounded in the common law, declared in this state by statute, and perfectly well settled in this court. The law considers and treats him as having "intruded into the office," and estopped himself from denying that he is executor. The major premise of the plaintiff is therefore undeniably true. But his minor premise, which is, in substance, that an executor appointed and qualified in another state, is such an entire stranger to the assets of his testator which were situate or owing in this state at the time of his death, that he becomes an intermeddler if he removes or collects them without taking administration here, is not true. Nor would all his conclusions follow if it were. The executor is not a stranger to the property, and can not be an *intermeddler*. There are undoubtedly dicta, and from distinguished judges, which countenance that assumption, and one or two decided cases in

point; but the cases were not well considered, and are not authority; and the dicta are clearly founded on cases since over-ruled, or misconceptions of the great principles which lie at the foundation of the branch of international law involved, or are expressions made without sufficient consideration, in the haste of voluminous writing. Thus Judge Story, from whose Conflict of Laws both parties have quoted freely, citing *Campbell* v. *Tousey*, 7 Cowen, 64, and adopting the principle on which alone that case can stand, states the law as the plaintiff claims it to be. But *Campbell* v. *Tousey* has been questioned on both the points involved in it, and is not now an authority in the state of New York, for the principles adopted in later cases are irreconcileable with it. Nor are all the other doctrines advanced by Judge Story, and cited by the plaintiff, sustainable.

Commencing in the 512th section with the remark that " in regard to the title of executors and administrators derived from a grant of administration in the country of the domicil of the deceased, it is to be considered that the title can not *de jure* extend as matter of right beyond the territory of the government which grants it, and the moveable property therein," in which he assumes that the *title* of an executor as well as that of an administrator is " derived from a *grant* of administration," and noticing the fact that the title, if acknowledged at all, is acknowledged " *ex comitate*," and subject to the protection which every government owes to its own creditor citizens, he passes to the proposition that an executor or administrator can not sue or be sued in another state, and can not collect debts without being liable as executor de son tort; and closes the 514th section, cited by the plaintiff, by saying,—" for the original administration has no extra-territorial operation." But that is not in all respects a correct exposition of the law.

It is true, undoubtedly, that foreign laws are recognized, if at all, " *ex comitate*." But it is equally true that in every state of the Union, it is recognized law that personal property has no situs, and a title acquired to it, if good by the law of the domicil, is good every where, and will be recognized and

enforced in every state, unless it conflicts with its laws or the rights of its citizens. The title is recognized *ex comitate* undoubtedly ; that is the foundation of the rule ; but it is nevertheless a settled rule of international law, and as obligatory upon the courts as any legal rule of domestic origin. *Lawrence* v. *Kitteridge*, 21 Conn., 577 ; *Parsons* v. *Lyman*, 20 N. York, 103. Upon every question in respect to the character and validity of the title, the foreign law is resorted to and is conclusive, and has therefore, permissively it is true, but none the less really, an extra-territorial operation ; and it is only in respect to the legal right to assert that title in or by the aid of the courts of another state, or in opposition to recognized and peculiar rights of its citizens, that the law of the domicil has no extra-territorial operation.

This executor derived a title to all the movable property of his testatrix wherever situate, not from a grant of administration, but from the will as a recognized instrument of conveyance at common law. An administrator takes his title by force of the local law and the grant of administration. So far Judge Story is right. Not so with an executor. No probate is essential to his title unless there be some local statute which makes it essential. His title accrues at the instant of death, and without probate he may do many acts which appertain to his office. He may collect debts, sell property, pay debts and legacies, &c., and his acts will be legal. 1 Williams' Executors, 159, 160. So far as the local laws require him to prove the will, file an inventory, and settle the estate according to its provisions, he must conform to their directions, but such conformity is not essential to his *title* unless expressly made so by statute. And he may be sued and charged as executor de jure, not de son tort, unless he renounce, and upon proof of his acceptance by having acted as such, before he proves the will, for he *is* executor de jure, irrespective of such probate. This distinction is recognized law in this court. In *Riley* v. *Riley*, 3 Day, 74, cited by both parties, the court say :—" By the common law the power and right of an administrator are given only by the court that appoints him. The power of an executor is given by the will of the testator, but

his right to appear in any court, and the validity of his acts in that capacity, depend wholly on the probation of the will by the prerogative court within the limits of that local jurisdiction in which he claims the power to act." And so in Massachusetts. *Rand v. Hubbard*, 4 Met., 252. The court there say, by Shaw, Ch. J., " The property of goods is vested in the executor before probate. He may pay and receive debts, and may commence an action, though he shall not declare, because when he declares he must make profert of letters testamentary if he sues as executor or if the will is part of the proof necessary to his title, but he may maintain trover before probate for goods taken out of his possession, for then the profert of letters testamentary is not necessary." This executor had a title therefore to all the personal property of his testatrix wherever situate, and to the debts collected in this state, subject to the rights of the plaintiff, which the courts of this state are bound to recognize by a rule of international law, founded indeed in comity, but as fixed and settled as any rule of law by which we are to be governed.

But it is further said that the defendant had no title, and was suable as executor de son tort, because it is a well settled rule of law that a foreign executor can not sue or be sued in our courts. Certainly he can not sue, because his right to do so must be shown in the suit by proving the will, and that can not be proved in a common law court. Its validity must first be established in the court to which the law has given exclusive authority to determine that question. Whether he can sue or not, therefore, is not a question of title but of evidence, and it is the same in Massachusetts as here. *Rand v. Hubbard*, supra. This executor could not have sued there until he proved the will, or rather he could not have maintained the suit by the introduction of the will in evidence until it had been proved in the probate court. They have had a statute there requiring a probate in order to vest the title. Whether they now have does not appear and is immaterial, for the case finds that he did prove the will there, and his title vested as if there had been no such statute. Nor is there in my mind any doubt that this defendant could be

sued here as executor de jure. Most of the cases in which it has been holden that a foreign executor could not be sued, were cases where there were no assets in the jurisdiction where the suit was brought, and there was an attempt to charge him in respect to assets situate in the state or country of the domicil. Here there were assets in this state which the defendant had collected, and which the plaintiff as creditor was entitled to have appropriated to the payment of his debt, and why should he not be suable here, if at all, for that reason, and holden to that extent, as executor de jure? He was such, and could not and did not deny it; and not by grant of administration but by force of the will. He was suable before probate, as executor de jure, in Massachusetts, as every executor is who does not renounce; and his condition was substantially the same here. He is sued as executor generally in either case, and why resort to the legal fiction and estoppel when it is entirely unnecessary? Grant that it is necessary in respect to a foreign administrator, it is not so in respect to an executor. Moreover, how can they be resorted to, consistently with principle, when he is, and admits himself to be, a rightful executor, *in office* as such by appointment in the will, and not by force of any local law, and therefore could not by possibility, without previous renunciation, *intrude into it.* All the analogies of the law bearing upon the subject will be violated, as it seems to me, by holding this executor suable as executor de son tort, and not as executor de jure.

Admitting then that if the suit will lie against him at all, it will lie as executor de jure, and not de son tort, a second question raised in the case is, whether the defendant can successfully defend on the ground that he has fully administered and paid over to creditors and legatees in Massachusetts, before suit brought, the assets collected here. Such an administration here would be a defence. Is it so when completed there?

This question, and the incidental ones involved in it, are of great practical interest. State lines run between the domicil

and place of business of hundreds of our citizens and the number is constantly increasing. It is of frequent occurrence that other citizens die who have debts due them in other states. Executors, administrators and courts of probate must act respecting them, and the law should be clearly defined. It is international law and must be settled by the courts. When therefore such questions. come up before us they should be fully considered and settled in the light of great principles which can be recognized and applied in every state, that our system of laws may be uniform, stable and intelligible. Influenced by these considerations we propose to examine the question, although. such examination is not absolutely necessary to a decision of the case.

In the first place, then, I assume it to be true that the will of Abigail Marcy gave the defendant a title to the debts which were owing in this state. That title we are bound by a rule of international law of universal application to recognise, so far as we can do so in justice to our creditor citizens. The plaintiff as such creditor citizen had rights in respect to those debts which we must respect. What were those rights and how far shall we respect them ? He had a right to insist that our courts should not aid the defendant unless to take letters of administration. But he had no lien upon the debts, nor had he a right to require that the title of the defendant should be wholly ignored as a non-existent thing. That is the essence of his claim, but it can not be admitted without introducing inextricable confusion into this branch of the law. Nor had he a right to insist that the defendant should refrain from any assertion of his title unless he clothed himself with authority by administration here. That is another and more plausible claim, countenanced by some early cases, but not by later and better considered ones. And upon principle we can not say that the will of a citizen of a sister state, or even a grant of administration there, do not confer any rights in respect to personal property, situate here at the time of death. The great principle that a title good by the law of the domicil is good here, is and must be to some extent recognized in respect to the title even of an administrator. Thus we recognise

the right of a foreign executor or administrator to ancillary administration here. And if such administration is taken by a creditor of the deceased, we hold him to be the " deputy or agent " of the foreign executor or administrator, and accountable over to him for any surplus. *Perkins* v. *Stone,* 18 Conn., 270 ; *Dawes* v. *Head,* 3 Pick., 141 ; *Fay* v. *Haven,* 3 Met., 114. If the estate at the place of domicil is insolvent, but the assets here are sufficient to pay the debts here, we require the creditors here, upon principles of international law and not by force of any statute of ours, to submit to the foreign law of division, and take a proportionate share of the whole estate with the foreign creditors, and the balance to be remitted to the principal administrator. *Perkins* v. *Stone,* supra; *Davis* v. *Estey,* 8 Pick., 475. And if the estate is solvent at the place of domicil we recognise the right of the executor or administrator to withdraw the balance found due here to be distributed there, or we distribute it here and direct the payment of it according to the law of the domicil. *Lawrence* v. *Kitteridge,* 21 Conn., 577. We should undoubtedly hold, as our courts of probate always hold, that our own executors and administrators are bound to inventory and collect debts due the deceased in other states, and as part of the duty secured by the bond ; and such is now the law generally. *Shultz* v. *Pulver,* 11 Wend., 361, and cases there cited by Judge Nelson ; *Parsons* v. *Lyman,* 20 N. York, 103 ; *Potter* v. *Hiscox,* 30 Conn., 508. And if the plaintiff had taken administration here, to appropriate the monies due the deceased here to the payment of his debt, he would have been an ancillary administrator, " the deputy or agent " of the defendant, and bound by the law of division and distribution of the domicil. In all this we recognize a qualified title in the executor or administrator, and to some extent an extra-territorial operation of the foreign law, inconsistent with the broad claims of the plaintiff.

In the second place, I assume that the defendant, having such qualified right or title to the debts due here, and being under obligation to inventory them and administer them there, and for that purpose to collect them here, had a perfect right

to collect them here and administer them there without cloth-ing himself with administration here, if the debtors were will-ing to pay, and the plaintiff did not *interfere* and prevent it. Some of the earlier cases in Massachusetts and Vermont were decided on the ground that an administrator had no right to collect simple contract debts due in another state. *Goodwin* v. *Jones*, 3 Mass., 514; *Stevens* v. *Gaylord*, 11 id., 256; *Vaughn* v. *Barrett*, 5 Verm., 333. But Judge Shaw, in *Rand* v. *Hubbard*, questions the correctness of these decisions thus : " These are all cases of intestacy, and turn on the authority of an administrator, as contra-distinguished from that of an executor appointed by the will of a testator. In such case it is held that as an administrator derives his whole authority from the law of the state under which he is appointed, his authority can not be extended beyond its jurisdiction ; though were it a new question there would be great convenience and perhaps some legal ground to decide, as between the states of this union, that where a principal administration is granted, that is, an administration in the state where the intestate had his domicil and by whose laws his personal property must be distributed and his estate settled, the principal administrator should so far have authority over debts due in other states by negotiable securities or otherwise, that a payment to him by the citizens of another state before administration granted in the latter should be a good discharge." These remarks of Judge Shaw clearly show that the earlier cases referred to were not sufficiently considered, so far as they bear upon the question under consideration.

In New York it was long since holden by Chancellor Kent that a voluntary payment to a foreign administrator was good, and that the protection due their creditor citizens was suffi-ciently afforded by a refusal by the courts to enforce the title of a foreign administrator or executor, unless he clothed himself with an ancillary administration, and by the right of the creditor to take ancillary administration, and divest the title of the principal administrator, and appropriate the assets to the payment of his debt. That doctrine was reaffirmed in *Vroom* v. *Van Horne*, 10 Paige, 549, and in *Schultz* v. *Pulver*,

already cited, and *Parsons* v. *Lyman*, 20 N. York, 103. In the last case the testator was domiciled at the death in Connecticut, but had debts due him in New York. The executor went there, collected them without taking administration there, brought them here and fully administered them. Afterwards, with a view to making some transfers, the executor took ancillary administration there, and the surrogate, at the instance of legatees residing there, held that he must inventory and re-administer there the debts which he had collected there and administered here; but the Court of Appeals reversed his decision and held, "1st., that the rule that personal property is subject to the law which governs the person of its owner as to its transmission by bequest or intestacy, though founded on inter-national comity, is equally obligatory upon our courts as a legal rule of purely domestic origin; 2d., that a foreign administrator, though having no authority as such to coerce the collection of assets in this state, is equally accountable to the tribunal appointing him, where they are voluntarily paid or delivered to him here, as if they were collected within its jurisdiction, and 3d., that an executor appointed in Connecticut, receiving payment without suit from debtors of the decedent within this state, (New York,) may account therefor to the probate courts of Connecticut; and the fact that he subsequently takes out letters of administration in this state does not make him liable to account here for such assets in the course of administration under the orders of the foreign tribunal." And see *Atkins* v. *Smith*, 2 Atkins, 63, and *Trecothic* v. *Austin*, 4 Mason, 33. The current of decision is now to the effect that, in the absence of an ancillary administration, a principal administrator, and *a fortiori* an executor, can collect and remove debts or property due or situate in another state if voluntarily paid or given up. In our own state we have no case in point. But in *Upton* v. *Hubbard*, 28 Conn., 274, Judge Ellsworth recognized the doctrine. He said:—"If indeed the principal executor or assignee go there (into the sister state) himself and without acquiring local authority collects a debt or receives property belonging to the estate, it is well enough, we suppose, if the creditors and legatees do not

interpose and object; for in such case the same end is accomplished which would be reached through an ancillary administration, and the law does not require any unnecessary formality and expense, but looks at the substance of the thing." This dictum of the learned judge contains the gist of the whole matter. It implies *a title* in a foreign executor which the debtor may *recognize*. It implies the right and duty of the executor to collect without the unnecessary expense of local administration if he can, that is, if the debtor is willing to pay and the creditor does not interpose and object. How may he interpose and object? Objection is dissent expressed by words or conduct. Interposition and objection then are both active, and can not consist in lying by, relying on a supposed right, incident to the debt, which may be enforced at any time. According to the decisions in New York such interposition must be by taking administration, and clothing himself with a title, and a right to appropriate the debt in payment by administering it. And this he may do at any time before it has been fully administered at the place of domicil by the principal administrator. So I think he may sue the principal executor or administrator and hold him to the extent of the assets so collected or removed, at any time before they have been fully administered at the place of domicil. But if he lies by and neither takes administration nor brings suit until the principal executor or administrator has fully administered, he waives his rights and the principal administrator should be protected.

In the third place, if it was true that the defendant had intermeddled and intruded into the office, and that he was not protected by a full administration in Massachusetts, still the plaintiff could not recover in this case. The defendant is sued as executor. If in office as the plaintiff assumes, and whether he intruded or not, the plaintiff must abide his right as executor to give the notice authorized by statute. It is as essential to an intruding executor as to one appointed by the will, that he should have right to give such notice, that he may pay if the debt is due, or distribute the assets according to law if it

is not. It is legal and just therefore that the plaintiff should be holden to the bar.

We advise judgment for the defendant.

In this opinion the other judges concurred.

# SUPREME COURT OF ERRORS.

## FAIRFIELD COUNTY, FEBRUARY TERM, 1865.

### Present,

HINMAN, C. J., DUTTON, BUTLER, McCURDY AND PARK, Js.